# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

**DEBORAH M. BABCOCK**

          Plaintiff,

    v.

**CAROLYN W. COLVIN**,
Acting Commissioner of Social Security

          Defendant.

Case No. 6:15-cv-00588-SI

**OPINION AND ORDER**

Sherwood J. Reese and Drew L. Johnson, 1700 Valley River Drive, Eugene, Oregon, 97401. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 Southwest Third Avenue, Suite 600, Portland, Oregon 97201-2902; John C. Lamont, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, Washington 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

       Deborah M. Babcock ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

       The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see*

*also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for DIB and SSI on March 13, 2012, alleging disability beginning August 31, 2010. AR 8. She was 44 years old at the alleged disability onset date. AR 17. She alleged disability due to Irritable Bowel Syndrome ("IBS"), migraines, nerve damage, diabetes, leg pain, depression, panic disorders, anxiety, and insomnia. AR 60. The Disability Determinations Service ("DDS") denied her application initially on August 30, 2012, and upon reconsideration, on December 21, 2012. AR 89, 118. Plaintiff subsequently requested a

hearing before an Administrative Law Judge ("ALJ"). AR 135. An administrative hearing was

held on November 6, 2013. AR 26. After considering all the evidence in the record, the ALJ

concluded that Plaintiff was not disabled under the Social Security Act. AR 19. The Appeals

Council considered the record but declined to review the decision, making the ALJ's decision the

final order of the Commissioner. AR 1. Plaintiff now seeks judicial review of that decision.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R.

§§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is

potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential

process asks the following series of questions:

1.  Is the claimant performing "substantial gainful activity?" 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving
    significant mental or physical duties done or intended to be done for pay
    or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing
    such work, she is not disabled within the meaning of the Act. 20 C.F.R.
    §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing
    substantial gainful activity, the analysis proceeds to step two.

2.  Is the claimant's impairment "severe" under the Commissioner's
    regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An
    impairment or combination of impairments is "severe" if it significantly
    limits the claimant's physical or mental ability to do basic work activities.
    20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death,
    this impairment must have lasted or be expected to last for a continuous
    period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the
    claimant does not have a severe impairment, the analysis ends. 20 C.F.R.

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3.      Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4.      Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.      Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this

burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C.  The ALJ's Decision

The ALJ began her opinion by noting that Plaintiff met the insured status requirements of the Social Security Act through September 30, 2012. AR 10. The ALJ then applied the sequential process. AR 10. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after August 31, 2010, the alleged disability onset date. *Id.*[1] At step two, the ALJ determined that Plaintiff had the following medically determinable severe impairments: migraines, depression with anxiety, panic disorder, restless leg syndrome, irritable bowel syndrome, mild degenerative disc disease of the lumbar spine, greater trochanteric bursitis, diabetes mellitus, obesity, and insomnia. AR 10-11. At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of one of the listed impairments. AR 11.

The ALJ then determined Plaintiff's RFC, finding that Plaintiff can:

> perform a range of light work as defined in 20 CFR
> [§§] 404.1567(b) and 416.967(b) except that she can perform tasks
> that involve up to six hours of sitting, and up to six hours
> standing/walking in an 8-hour workday (with normal breaks). Such
> tasks must permit the claimant to alternate sitting or standing every
> 30 minutes while remaining on-task. She must avoid climbing
> ladders, ropes, or scaffolds, but she can occasionally climb stairs
> and ramps. She can also occasionally stoop, kneel, crouch, and

---

[1] The ALJ noted, however, that Plaintiff's earnings record showed that Plaintiff received $718 during the first quarter of 2011. The ALJ commented that "[w]hile this amount does not rise to the level demonstrating substantial gainful activity, it nevertheless suggests that [Plaintiff] remained capable of performing at least some basic work activities in spite of [Plaintiff's] alleged impairments." AR 10.

crawl. She can understand, remember, and carry out no more than simple instructions that can be learned within 30 days. She can tolerate occasional public contact, but she should not work directly with the public. She can also tolerate occasional contact with co-workers, but she should avoid group tasks. She is limited to low-stress occupations, meaning occupations that involve no more than occasional changes in work setting and work duties. She must avoid operation of foot controls with her right lower extremity. She must avoid exposure to workplace hazards, such as unprotected heights or dangerous machinery. She must avoid exposure to respiratory irritants, such as dusts, fumes, gasses, or odors and exposure to flashing lights or loud noises, in excess of those generally found in an ordinary office environment.

AR 13. At step four, the ALJ determined that Plaintiff was unable to perform past relevant work.

AR 17. Lastly, at step five, the ALJ reviewed Plaintiff's RFC, age, education, and work

experience, and determined that there exist significant numbers of jobs in the national economy

that Plaintiff could perform. *Id.* Consequently, the ALJ determined that Plaintiff was not

disabled. AR 18.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (1) failing to identify clear and convincing reasons

for rejecting Plaintiff's subjective symptom testimony; (2) improperly rejecting lay witness

testimony; (3) failing to include findings from Dr. Ryan Scott, Ph.D., and Dr. Michael Brown,

Ph.D., in the RFC; and (4) failing to prove at step five that Plaintiff could perform other work in

the national economy.

## A.  Plaintiff's Credibility

Plaintiff argues that the ALJ's adverse credibility finding is reversible error. There is a

two-step process for evaluating the credibility of a claimant's testimony about the severity and

limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009).

"First, the ALJ must determine whether the claimant has presented objective medical evidence of

an underlying impairment 'which could reasonably be expected to produce the pain or other

symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting

*Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so, "the claimant

need not show that her impairment could reasonably be expected to cause the severity of the

symptom she has alleged; she need only show that it could reasonably have caused some degree

of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

The ALJ may consider objective medical evidence and the claimant's treatment history,

as well as the claimant's daily activities, work record, and observations of physicians and third

parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d

at 1284. The Commissioner recommends assessing the claimant's daily activities; the location,

duration, frequency, and intensity of the individual's pain or other symptoms; factors that

precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any

medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other

than medication, the individual receives or has received for relief of pain or other symptoms; and

any measures other than treatment the individual uses or has used to relieve pain or other

symptoms. *See* SSR 96-7p, available at 1996 WL 374186. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

Further, the Ninth Circuit has said that an ALJ also "may consider . . . ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, . . . other testimony by the claimant that appears less than candid[,] [and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment . . . ." *Smolen*, 80 F.3d at 1284. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the first step of the credibility framework, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . ." AR 14. At the second step, however, the ALJ found that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." *Id.* The ALJ offered three reasons for her adverse credibility finding: (1) Plaintiff's subjective symptom testimony was inconsistent with objective medical evidence; (2) Plaintiff's report of severe IBS was inconsistent with conservative medical treatment; and (3) Plaintiff's veracity regarding Percocet use was called into question by the record and Dr. Terry Copperman, M.D. AR 14-16.

### 1. **Plaintiff's Subjective Symptom Testimony**

The ALJ began her adverse credibility finding by holding that "the credibility of [Plaintiff's] subjective pain complaints is undermined by inconsistencies between her reporting and the evidence of record." AR 15. The ALJ noted that in the initial application materials, Plaintiff stated that she could not work full-time because of her "[IBS], diabetes, insomnia,

chronic leg and back pain, and symptoms of depression and anxiety" and that Plaintiff stopped

working because of her condition in August 2010. AR 14, 212. The ALJ highlighted Plaintiff's

2011-12 medical records of back and right hip pain, IBS, diabetes, and restless leg syndrome.

The ALJ explained that, "[w]hile these conditions reasonably might [have] caused the claimant

fatigue and discomfort, treatment notes indicate that the claimant nevertheless retained normal

neurologic functioning, including sensation, reflexes, coordination, and muscle strength."

AR 15, 329. Further, Plaintiff also retained full range of motion in all joints and "did not appear

to be in acute distress." *Id.* The ALJ also pointed to Plaintiff's statements regarding pain in

Plaintiff's back, legs, and feet; migraines; stomach problems; and, daily fatigue. AR 14. The ALJ

recognized that medical records from the time of Plaintiff's alleged onset date contained

Plaintiff's complaints of lower back pain but also showed that Plaintiff's "lumbar spine appeared

normally aligned with well-preserved disc heights." *Id.* The ALJ determined that these "objective

findings are not indicative of a disabling pain condition." *Id.*

The ALJ explained further that Plaintiff's 2012 treatment notes showed that Plaintiff

"presented as a healthy appearing female who is in no acute distress." AR 15, 300. Plaintiff also

appeared "[a]wake, alert, and oriented," and "[w]ell dressed, well nourished with a pleasant

affect." *Id.* Despite conflicting State agency medical assessments of Plaintiff's functioning, the

ALJ gave greater weight to the more restrictive assessment, finding that Plaintiff is "restricted to

no more than occasional lifting/carrying of up to 20 pounds." AR 15. The ALJ noted that this

limitation reasonably accounted for Plaintiff's alleged chronic low back pain. *Id.* The ALJ

concluded her adverse credibility finding of Plaintiff's subjective symptom testimony by

explaining that "such a clinical presentation is not consistent with the level of impairment alleged

by the claimant." *Id.* The Court finds that the ALJ's conclusion regarding Plaintiff's subjective

symptom testimony is supported by substantial evidence in the record.

### 2.  Plaintiff's Conservative IBS Treatment

Next, the ALJ noted that Plaintiff alleged severe abdominal cramping because of her IBS,

but that "the record shows very little treatment beyond careful dietary management." *Id.* An ALJ

may use evidence of conservative treatment to discount a claimant's testimony regarding the

severity of the claimant's impairment. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008)

(citing *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007)).

The evidence in the record, however, demonstrates that Plaintiff sought and continued to

receive more treatment for her IBS than mere dietary management. At the hearing, Plaintiff

testified that she takes "a couple of medications that help [her] stomach [and] help a little bit."

AR 36. Plaintiff also testified that she received a colonoscopy and an endoscopy and that her

new treatment provider, Shannon Micheel, N.P., was arranging for Plaintiff to see a

gastroenterologist. AR 35-36, 438. Additionally, Plaintiff reported to Dr. Lloyd Wiggins, M.D.

that she had two large precancerous polyps removed from her colon and would receive another

colonoscopy. AR 92. The record also demonstrates that Plaintiff takes a variety of medications

for her IBS, including Dicyclomine and Omeprazole. AR 252. These facts directly contradict the

ALJ's conclusion that Plaintiff underwent little treatment beyond dietary management for her

IBS. Here, the ALJ's conclusion is not supported by substantial evidence in the record.

### 3.  Plaintiff's Percocet Use

The ALJ found that Plaintiff's "veracity was also questioned by a treating physician."

AR 15. To determine a claimant's veracity, an ALJ may look to evidence of the claimant making

false statements and the claimant's prior inconsistent statements. *Tommasetti*, 533 F.3d at 1039-

40. When assessing credibility, an ALJ must consider any "evidence that bears on the

consistency and veracity of the claimant's statements." *Petrosino v. Colvin*, 2016 WL 270909, at

*2 (D. Or. Jan. 21, 2016). An ALJ properly finds that a plaintiff's inconsistent reports to her

medical providers undermine her credibility. *Oswald v. Astrue*, 2013 WL 82828, at *2 (D. Or.

Jan. 7, 2013). Specifically, an ALJ may rely on "inconsistent reports of alcohol or drug use as

issues of credibility." *Wise v. Astrue*, 2010 WL 4536788, at *4 (D. Or. Nov. 1, 2010) (citing

*Verduzzco v. Apfel*, 188 F.3d 1087, 1090 (9th Cir. 1999).

Here, the ALJ highlighted Dr. Copperman's opinion that Plaintiff "displayed a lack of

truthfulness" regarding her narcotic pain medication use. AR 15, 396. The ALJ explained that

Dr. Copperman's comments called Plaintiff's veracity into question. AR 15. The ALJ noted that

Plaintiff repeatedly told Dr. Copperman that "she had been taking about 30 Percocet per month,

despite the fact that she had not been prescribed the drug in the previous two months." *Id.* At the

hearing, Plaintiff told the ALJ that Plaintiff obtained Percocet from her friends for two months

when her treatment providers would not prescribe her more. AR 39. Notably, Dr. Copperman

refused to establish care with Plaintiff due to his concerns about her truthfulness. AR 16, 396.

The ALJ concluded that these "factors tend to erode the persuasive value of the claimant's

subjective complaints." AR 16. The ALJ reasonably questioned Plaintiff's credibility because of

her statements to Dr. Copperman and to the ALJ about her Percocet use, and Dr. Copperman's

refusal to treat Plaintiff because of "her lack of truthfulness." AR 396. Thus, the ALJ's

conclusion is supported by substantial evidence in the record.

### 4. Credibility Conclusion

The Courts finds that the ALJ gave clear and convincing reasons based on the objective

medical evidence for rejecting the severity of Plaintiff's subjective symptom testimony.

*Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction

with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The Court also finds that the ALJ provided clear and convincing reasons for finding Plaintiff to be less than fully credible regarding her Percocet use. *Wise*, 2010 WL 4536788, at *4. The ALJ's adverse credibility finding regarding Plaintiff's conservative IBS treatment, however, is not supported by substantial evidence in the record and is in error.

Here, the Court sustains two of the ALJ's adverse credibility determinations: (1) Plaintiff's subjective pain testimony; and (2) Plaintiff's Percocet use. An ALJ's credibility decision may be sustained even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. Thus, the ALJ's two reasons are sufficient for the Court to affirm the ALJ's adverse credibility finding. The ALJ's improper adverse credibility finding concerning Plaintiff's conservative IBS treatment is a harmless error.

## B.  Lay Witness Testimony

Plaintiff argues that the ALJ failed properly to credit and incorporate into the RFC lay witness testimony discussing Plaintiff's limitations. Plaintiff specifically argues that the ALJ did not properly incorporate testimony from: (1) Stephanie Babcock, (2) Donna Wells, (3) Alicia Babcock, and (4) Christina Beaty. "In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). Lay witness testimony regarding a claimant's symptoms or how an impairment affects her ability to work is competent evidence. *Id.* Thus, an ALJ may not reject such testimony without comment. *Id.* In rejecting lay witness testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Molina v. Astrue*, 674 F.3d 1104, 1114 (9th Cir. 2012).

An ALJ errs if she fails to "explain her reasons for disregarding . . . lay witness testimony, either individually or in the aggregate." *Id.* at 1115 (quoting *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996)). This error may be harmless "where the testimony is similar to other testimony that the ALJ validly discounted, or where the testimony is contradicted by more reliable medical evidence that the ALJ credited." *See id.* at 1118-19. Additionally, "an ALJ's failure to comment upon lay witness testimony is harmless where 'the same evidence that the ALJ referred to in discrediting [the claimant's] claims also discredits [the lay witness's] claims.'" *Id.* at 1122 (quoting *Buckner v. Astrue*, 646 F.3d 549, 560 (8th Cir. 2011)). When an ALJ ignores uncontradicted lay witness testimony, "a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination." *Stout*, 454 F.3d at 1056.

**1.  Stephanie Babcock**

The ALJ reviewed the evidence from Plaintiff's daughter, Stephanie Babcock, and gave those observations "only partial weight." AR 16. The ALJ noted that Ms. S. Babcock wrote in October 2013, "that the claimant has had migraines for many years, and that her current pain symptoms 'will never get better, only worse!'" AR 16, 278. The ALJ explained that Plaintiff's migraine symptoms were documented before the alleged injury onset date, which demonstrated that Plaintiff "was able to engage in substantial gainful activity despite her headache symptoms." AR 16. The ALJ also highlighted that "[t]here is no support in the claimant's medical records for the intractable pain condition described by Ms. [S.] Babcock." *Id.* The ALJ continued, "[t]his circumstance was even noted by Dr. Copperman before [he] dismissed the claimant for her lack of candor." AR 16, 396. Dr. Copperman's notes revealed that Plaintiff complained of migraines but "without mention of intractable migraine." AR 396.

Plaintiff argues that the ALJ did not provide germane reasons for only partially weighing Ms. S. Babcock's testimony. Before discussing lay witness testimony, the ALJ's opinion noted the objective medical evidence contradicting Plaintiff's subjective pain testimony. AR 14-15. Thus, it was unnecessary for the ALJ to repeat medical evidence that contradicted some of Ms. S. Babcock's testimony regarding Plaintiff's pain condition. The ALJ did, however, provide specific medical evidence from Dr. Copperman that directly refutes some of Ms. S. Babcock's testimony. AR 15-16. The Court finds that ALJ provided specific medical reasons, supported by substantial evidence in the record, for giving Ms. S. Babcock's testimony partial weight.

### 2. Donna Wells

The ALJ gave partial weight to the testimony from Donna Wells, Plaintiff's mother. AR 16. The ALJ noted that Ms. Wells wrote that Plaintiff's condition "has declined to the point that she is 'bed bound' for hours and tired 'all the time.'" AR 16, 279. The ALJ found that Ms. Wells' conclusion was "not fully consistent with observations . . . regarding the claimant's clinical presentation—particularly the fact [that] she presented as alert, fully oriented, and with a pleasant affect." AR 16. Additionally, the ALJ noted that the agency staff recorded that Plaintiff held a baby throughout the entire application interview. *Id.* The ALJ concluded that Plaintiff's daily living activities, "including providing care to a special needs child, [are] not fully consistent with the level of impairment described by Ms. Wells." *Id.*

Plaintiff argues that the ALJ did not give Ms. Wells' testimony sufficient weight because the ALJ improperly concluded that someone who was bed bound multiple times per month could not also be reported as "alert" and "fully oriented" at an appointment. The ALJ did, however, rationally conclude that someone who is "tired all the time" would not be notably "alert" and "fully oriented" at a doctor's appointment. AR 279, 300. Plaintiff also argues that the ALJ improperly concluded that Plaintiff's daily living activities, including caring for her special

needs daughter, were inconsistent with Ms. Wells' testimony. Plaintiff further argues that even with her disability, she is able to care for her special needs daughter because the rest of her family significantly helps to provide ongoing care.

It is plausible to conclude that a person could provide some care for a special needs child though that person is bed bound for multiple days each month and "tired all the time," so long as that person received substantial help from other family members. It is equally plausible to conclude, however, as did the ALJ, that someone who is bed bound for multiple days each month and is "tired all the time" could not provide "constant special care" and could not reasonably take care of a daughter who was "very dependent on [Plaintiff] so she's always needing [Plaintiff's] utmost attention . . . ." AR 40. Where there are two rational interpretations of the evidence, the ALJ's finding is sustained. *See Burch*, 400 F.3d at 679; *see also Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Thus, the Court finds that ALJ gave specific reasons, supported by substantial evidence in the record, for giving Ms. Wells's opinion only partial weight.

### 3. Alicia Babcock

After reviewing testimony from Alicia Babcock, Plaintiff's daughter-in-law, the ALJ gave partial weight to Ms. A. Babcock's observations. AR 16-17. Ms. A. Babcock's letter noted that Plaintiff's functional capacity "is limited by headaches, balance issues, speech problems, depressed mood, memory deficits, and joint pain. AR 16, 280. The ALJ noted that Plaintiff's "treatment providers have mentioned no problems with speech or balance." AR 16. The ALJ concluded that the RFC "reasonably accounts for claimant's various pain symptoms, as well as the claimant's subjective complaints of fatigue." AR 16-17.

Plaintiff argues that the ALJ failed to include limitations in the RFC that Ms. A. Babcock's testimony identified. Again, the ALJ previously addressed specific reasons for discrediting the level of pain testimony regarding Plaintiff's symptoms and was not required to

repeat those reasons when partially discrediting Ms. A. Babcock's lay witness testimony. Plaintiff does not point to any specific medical evidence that refutes the ALJ's conclusion. The ALJ's statement that none of Plaintiff's treatment providers noted problems with speech or balance is supported by substantial evidence in the record. In February 2013, Dr. Copperman noted that Plaintiff had normal speech, despite Ms. A. Babcock's October 2013 testimony that Plaintiff's speech was "unbalanced" and that Plaintiff "studders [sic] a lot when she is trying to explain something." AR 280, 398. Dr. Benjamin Broniel, M.D., reported that Plaintiff had "[n]ormal speech" at her November 2013 emergency room visit. AR 406. Dr. Delta Ruscheinsky, M.D., Plaintiff's long-term treating physician, reported just one month after Ms. A. Babcock's testimony that Plaintiff had "normal sensation, reflexes, [and] coordination" despite Ms. A. Babcock's testimony that Plaintiff "has really bad balance" and "has falling [sic] many times." AR 280, 304, 307, 316, 329. Further, the ALJ did not completely discredit Ms. A. Babcock's testimony, instead using some of the pain testimony to establish Plaintiff's limitations in the RFC. Thus, the ALJ's specific reasons for giving Ms. A. Babcock's testimony only partial weight are supported by substantial evidence in the record.

### 4.  Christina Beaty

The ALJ noted that Christina Beaty's testimony indicated that Plaintiff had difficulty raising "six children due to her various health problems." AR 16, 283. The ALJ understood that "[t]he challenges inherent in raising her children alone has undoubtedly been a profound source of stress for [Plaintiff]." AR 16. The ALJ concluded that "[i]n spite of these psychosocial stressors, however, the medical evidence cited above indicates that the claimant still retains adequate mobility, strength, stamina, and mental functioning to perform the range of light, unskilled work," as noted in the RFC. *Id.*

Plaintiff argues that the ALJ failed to consider Ms. Beaty's testimony regarding Plaintiff's insomnia and migraines. The ALJ is not required to refute each of Ms. Beaty's statements and did acknowledge Ms. Beaty's testimony concerning Plaintiff's stress as a result of raising six children and simultaneously dealing with a variety of medical problems. The ALJ reiterated, however, that the medical evidence did not support the level of limitations described by the lay witness. The Court sustains the ALJ's reasoning for rejecting the level of pain testimony described by lay witnesses because it is inconsistent with the medical evidence in the record. Thus, the ALJ's reasoning for only partially incorporating the limitations in Ms. Beaty's lay witness testimony is supported by substantial evidence in the record.

## C.  Medical Evidence Incorporated into the RFC

Plaintiff next argues that the ALJ's RFC failed to properly incorporate Plaintiff's limitations from examining psychologist Dr. Scott and reviewing psychologist Dr. Brown. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). If a treating doctor's

opinion is contradicted by the opinion of another physician, the ALJ must provide "specific and legitimate reasons" for discrediting the treating doctor's opinion. *Id.*

In addition, the ALJ generally must accord greater weight to the opinion of an examining physician than that of a non-examining physician. *Orn*, 495 F.3d at 631. As is the case with the opinion of a treating physician, the ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the opinion of an examining physician is contradicted by another physician's opinion, the ALJ must provide "specific, legitimate reasons" for discrediting the examining physician's opinion. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). An ALJ may reject an examining, non-treating physician's opinion "in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with medical records, inconsistency with a claimant's testimony, and inconsistency with a claimant's daily activities. *Tommasetti*, 533 F.3d at 1040; *Andrews*, 53 F.3d at 1042-43. An ALJ effectively rejects an opinion when he or she ignores it. *Smolen*, 80 F.3d at 1286.

### 1. Dr. Scott

The ALJ gave weight to examining psychologist Dr. Scott's conclusions and "accounted for his opinion by restricting the claimant to 'low stress' occupations that involve simple, unskilled instructions." AR 16. The ALJ noted Dr. Scott's conclusion that Plaintiff "would not be expected to have significant limitations in understanding simple or complex instructions." AR 16, 386. The ALJ also highlighted, however, that Plaintiff's "feelings of panic and

depression would likely impose 'moderate' difficulties in working a 40 hour workweek or responding appropriately to criticism from supervisors." AR 16. The ALJ subsequently included "certain social limitations to minimize the likelihood of distraction or social anxiety." *Id.* Plaintiff concedes that the ALJ did not need to provide clear and convincing evidence because the ALJ did not reject Dr. Scott's opinion.

Plaintiff argues that despite giving Dr. Scott's opinion "weight," the ALJ failed to incorporate Dr. Scott's limitations of working a 40-hour work week into Plaintiff's RFC. Here, the ALJ incorporated Dr. Scott's finding that Plaintiff's panic disorder and depression could make full time work difficult, by preemptively reducing the work-place stressors that would cause Plaintiff difficulties. The RFC limits Plaintiff's interaction with the public and supervisors and also limits Plaintiff's coworker interaction and group tasks. The RFC explicitly limits Plaintiff to "low-stress occupations, meaning occupations that involve no more than occasional changes in work setting and work duties." AR 13. The ALJ specifically used Dr. Scott's findings in order to formulate low-stress limitations into Plaintiff's RFC. Dr. Scott's findings did not suggest that Plaintiff could never work a 40-hour work week. Here, the ALJ properly accounted for Dr. Scott's findings by eliminating the possibility of a stressful work-place environment which could have caused Plaintiff problems in sustaining full time work. Because the RFC eliminates the possibility that Plaintiff would work in a panic-inducing environment, Plaintiff should be able to work full time. Thus, the ALJ's incorporation of Dr. Scott's findings into the RFC is supported by substantial evidence in the record.

### 2. Dr. Brown

Next, the ALJ gave "greater weight to the State agency's initial assessment," the August 2012 assessment, which included testimony from Dr. Brown. AR 15. In the assessment, Dr. Brown found that Plaintiff was "moderately limited' in her ability to interact appropriately with

the general public. AR 70. Dr. Brown specifically explained, however, that Plaintiff "is able to have appropriate social behavior and interact appropriately w[ith] public/co-workers [and] supervisors but would do best in a work setting that does not require frequent close social contact [due to] the stress it places on [Plaintiff] to manage [her] mood [symptoms]." *Id.*

Plaintiff draws the court's attention to testimony from the VE at Plaintiff's hearing in response to hypothetical with a moderate limitation. Plaintiff argues that the VE testified that Dr. Brown's findings of Plaintiff's limitations would be disabling. In his report, Dr. Brown explained that Plaintiff could maintain adequate concentration, persistence, and pace "for simple repetitive routine tasks for normal 2 hour work periods." AR 69. The Court, however, disagrees with Plaintiff that the VE's testimony in response to questioning by Plaintiff's counsel was consistent with Dr. Brown's findings of Plaintiff's limited social interaction capacity. AR 55. Counsel's question to the VE hypothesized a person who "would be unable to function . . . 15 percent of the time . . . with interruption from psychologically based symptoms." *Id.* This form of hypothetical contradicts Dr. Brown's specific finding that Plaintiff "can follow work place routines and schedules and maintain adequate attendance." AR 69.

Plaintiff also argues that the ALJ failed to incorporate Dr. Brown's findings into Plaintiff's RFC. The ALJ's RFC limitations, however, properly incorporate all of Dr. Brown's findings concerning Plaintiff's limitations in social work-place settings. Plaintiff's RFC explicitly states that "she can tolerate occasional public contact, but she should not work directly with the public. She can also tolerate occasional contact with co-workers, but she should avoid group tasks." AR 13. These RFC limitations appropriately incorporate Dr. Brown's concerns with Plaintiff's potential social interactions in her work-place setting. The Court finds that the

ALJ's RFC limitations regarding Plaintiff's social interactions and workplace attendance are supported by substantial evidence in the record.

## D. Plaintiff's Capacity to Perform Other Work

Lastly, Plaintiff argues that after the ALJ found that Plaintiff was unable to perform past relevant work, the ALJ failed to prove that Plaintiff could perform other work in the national economy. At the hearing, the VE identified a variety of jobs that Plaintiff could perform given the RFC's limitations, including: mail clerk, office helper, and computer control color photo printer operator. AR 18, 53-54. Only limitations supported by substantial evidence may be incorporated into the RFC and, by extension, the dispositive hypothetical question posed to the VE and subsequent answers. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). The Court found that the ALJ's RFC determination was supported by substantial evidence in the record. The ALJ relied on the RFC in formulating the hypothetical questions to the VE. Thus, the ALJ's decision based on the VE's testimony of other work available to Plaintiff, which reflects the limitations identified in the RFC, is supported by substantial evidence in the record.

## CONCLUSION

The Commissioner's decision is based on substantial evidence in the record. The ALJ's decision that Plaintiff is not disabled is AFFIRMED.

**IT IS SO ORDERED**.

DATED this 22nd day of March, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge